CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 29 2009
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JAMES & NINA O'CONNOR,
*Plaintiffs,*

v.

COLUMBIA GAS TRANSMISSION CORP.,
*Defendant.*

CIVIL NO. 3:09CV00022

**MEMORANDUM OPINION**

JUDGE NORMAN K. MOON

This matter is before the Court on Columbia Gas Transmission Corporation's Motion to Dismiss (docket no. 3) the O'Connors' suit against it for the alleged breach of a 1950 Right of Way Agreement and private nuisance (docket no. 1). For the reasons set forth below, Columbia's Motion will be granted.

### I. BACKGROUND

Although this suit was filed by the O'Connors in March of this year, the history relevant to the resolution of this matter dates back to June 2007, when Columbia originally filed an action in this Court to condemn, among other things, the right to install a pig launcher and a new natural gas pipeline across the O'Connors' property in Louisa County (*Columbia Gas Transmission Corp. v. Walker, et al.*, Civil No. 3:07CV00028-NKM, docket no. 1). On November 13, 2007, the O'Connors filed a Motion for Partial Summary Judgment in the condemnation action, contesting Columbia's authority to install the pig launcher on their property as a violation of a 1950 Right of Way Agreement between both parties' predecessors-in-interest (3:07CV28, docket no. 86). The matter was later resolved by an Agreed Order between the parties (3:07CV28, docket no. 90), which recognized Columbia's right and authority to condemn the pig launcher

1

and other above-ground appurtenances on the O'Connors' property, as well as the O'Connors' right to just compensation for the condemnation. The Order stated in pertinent part:

> IT APPEARING to the Court that Plaintiff, Columbia Gas Transmission Corporation, and Defendants, James and Nina O'Connor, agree that Columbia Gas Transmission Corporation has the right and authority to condemn a pig launcher/receiver, and other appurtenances, on the O'Connors' property at issue in this case and that the placement of a pig launcher/receiver, and other above-ground appurtenances, is a taking for which the O'Connors are entitled to just compensation; it is
>
> ORDERED that Plaintiff, Columbia Gas Transmission Corporation, has the right and the authority to condemn an easement for the placement of a pig launcher/receiver, and other above-ground appurtenances, on the property of the O'Connors at issue in this case, that the placement of a pig launcher/receiver, or any other above-ground appurtenance on the O'Connors' property shall be a taking for which the O'Connors are entitled to just compensation and that the Motion for Partial Summary Judgment filed by the O'Connors is resolved by the foregoing agreement of the parties.

Columbia proceeded to install the pig launcher, other above-ground appurtenances, and the new natural gas transmission pipeline (Line VM-109) on the O'Connors' property. Because Columbia and the O'Connors could not agree on the amount of just compensation owed for the condemnation, a jury trial on the issue of just compensation was eventually set for May 20, 2009.

On March 6, 2009, just over two months before the jury trial, the O'Connors filed this action in Louisa County Circuit Court, alleging breach of the 1950 Right of Way Agreement and private nuisance. Columbia timely removed the suit to this Court and filed the instant Motion to Dismiss (docket no. 3).[1] On April 21, 2009, Columbia filed an amended complaint (3:07CV28, docket no. 114) in the condemnation action pursuant to Federal Rule of Civil Procedure 71.1(f), which permits a plaintiff to amend its complaint

---

[1] In response, the O'Connors filed a Motion to Remand to State Court (docket no. 9), which this Court denied after a hearing consolidated with several pre-trial issues (described below) in the condemnation action on May 19, 2009.

at any time before trial without leave of court if certain conditions are met.[2] The amended complaint contained two significant differences from the complaint that was originally filed in the condemnation action: (1) it permitted the construction of roads over the newly-installed pipeline, so long as construction complied with Columbia's "Minimum Guidelines" (the original complaint prohibited the construction of roads over the pipeline), and (2) it removed from the areas to be condemned the portion of Line VM-109 running "approximately parallel" to two other existing pipelines on the O'Connors' property. Columbia claimed that the second amendment reflected the parties' mutual understanding that Columbia already had the right to install additional pipelines "approximately parallel" to the two existing pipelines pursuant to the 1950 Right of Way Agreement and thus did not need to condemn for that right.

Just prior to the start of the jury trial, the parties submitted a proposed Integrated Pretrial Order (3:07CV28, docket no. 140) identifying, among other things, the contested issues of law that required a ruling from the Court. After a pre-trial hearing, I issued an order on May 19, 2009 that clearly settled the contested legal issues so that the parties could properly frame their strategies and arguments concerning just compensation prior to the start of the jury trial (3:07CV28, docket no. 143). The May 19, 2009 Order established, among other things, that:

1. The relevant date of the taking of the O'Connors' property was June 4, 2007;

2. The 1950 Right of Way Agreement was binding on the O'Connors and Columbia;

---

[2] The O'Connors filed a Motion to Dismiss Columbia's amended complaint, which I initially granted at the pretrial hearing for reasons stated from the bench and in a Memorandum Opinion issued after the trial on May 26, 2009 (3:07CV28, docket no. 157). Despite initially granting the Motion to Dismiss, I did allow Columbia to amend its complaint prior to the jury trial, pursuant to Rule 71.1. The reasoning behind this decision is not pertinent to the resolution of this action, and is fully explained in the May 26, 2009 Memorandum Opinion (3:07CV28, docket no. 157).

3

3. The area of the newly-installed pipeline that crossed under the pre-existing pipelines on the O'Connors' property was "approximately parallel" to the pre-existing lines, as defined in the 1950 Right of Way Agreement; and

4. Under the 1950 Right of Way Agreement, the O'Connors could not assert a claim for compensation in excess of $275.00 for the installation of the new pipeline (excluding the installation of the pig receiver) but were entitled to any damages that arose from the construction, maintenance, operation, and removal of the new pipeline.

After a two-day trial during which both parties presented evidence concerning the amount of just compensation owed to the O'Connors for the partial taking of their property, the jury rendered a verdict awarding the O'Connors $24,400.00 (3:07CV28, docket no. 154). The verdict included $1,600.00 for the condemnation of any temporary easements, $2,800.00 for the condemnation of any permanent easements, and $20,000.00 for the damage to the value of the remainder of the O'Connors' property.

Despite the resolution of the condemnation action and the jury's award of compensation, the O'Connors persist in seeking damages in this action for the alleged breach of the 1950 Right of Way Agreement and private nuisance. The Right of Way Agreement grants Columbia "the right to lay, maintain, operate and remove a pipe line or pipe lines, for the transportation of gas..." across the O'Connors' property, and "the right at any time to lay additional lines of pipe approximately parallel to the first line herein provided," upon the payment of $275.00. Under the terms of the Agreement, Columbia is required to "pay for any damages that may arise from the construction, maintenance, operation and removal of said lines." Specifically, the O'Connors' complaint alleges that Columbia breached the Right of Way Agreement by: (1) constructing the pig receiver and other above-ground appurtenances on their property; (2) installing Line VM-109 in a manner that was not "approximately parallel" to the preexisting pipelines; (3) failing to

4

pay $275 for the installation of Line VM-109; and (4) failing to pay damages for the construction, maintenance, operation, and removal of Line VM-109. The O'Connors further claim that Columbia's breach of the Right of Way Agreement constitutes a private nuisance under Virginia Code § 55-50.1.[3] Columbia primarily argues that the O'Connors' suit should be dismissed because it is preempted by the jury's award of just compensation in the condemnation action and because it fails to state plausible claims for breach of contract and private nuisance under Virginia law.

## II. APPLICABLE LAW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken

---

[3] "Unless otherwise provided for in the terms of the easement, the owner of a dominant estate shall not use an easement in a way that is not reasonably consistent with the uses contemplated by the grant of the easement; any violation of this section may be deemed a private nuisance, provided, however, that the remedy for a violation of this section shall not in any manner impair the right to any other relief that may be applicable at law or in equity." Va. Code Ann. § 55-50.1 (2009).

as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

### III. DISCUSSION

### A. Preemption by Condemnation Award

Prior to the start of the jury trial on the issue of just compensation for the partial taking of the O'Connors' property, both parties were put on clear notice that: (1) the date of take applicable to the case was June 4, 2007; (2) Line VM-109 was "approximately parallel," as defined by the Right of Way Agreement, to the existing lines on the O'Connors' property; and (3) the O'Connors could not assert a claim in excess of $275.00 for the installation of the new pipeline but were entitled to damages that arose from the construction, maintenance, operation, and removal of Line VM-109. I made these pre-trial findings at the request of the parties so that they could properly present witnesses and evidence to the jury in support of their respective theories as to the amount of just compensation – not so the O'Connors could come before the Court at a later date in a separate action seeking additional damages for the installation, construction, maintenance, and operation of Line VM-109 on their property. Perhaps recognizing this, the O'Connors proceeded to present evidence at the jury trial in support of their claim for damages arising from the installation, construction, maintenance, and operation of Line VM-109, the pig receiver, and the other above-ground appurtenances. In fact, in his

opening statement, counsel for the O'Connors explained that the 1950 Right of Way Agreement provided for the installation of Line VM-109 but required Columbia "to pay any damage relating to the construction and maintenance, operation or removal" of the line. The O'Connors then proceeded to present extensive evidence through their expert witnesses that Line VM-109 would interfere with the use and development of their property and imposed restrictions on their property that the market would react negatively to. Dennis Gruelle, the O'Connors' expert appraiser, opined that the cumulative effect of Line VM-109 and the pig receiver resulted in a twenty percent diminution in the value of the remainder of the property. Based on the testimony of Gruelle, and the other expert witnesses offered by both the O'Connors and Columbia, the jury eventually awarded the O'Connors $24,400.00 in compensation, including $20,000.00 for the diminution in the value of the remainder of the property. Having received this award, and having been squarely presented with the opportunity to offer evidence to the jury regarding any alleged damages suffered under the 1950 Right of Way Agreement, the O'Connors may not now seek further compensation from Columbia. They are accordingly precluded from seeking damages in this action for the construction, maintenance, operation, and removal of Line VM-109, or on the basis that Line VM-109 is not "approximately parallel" to the existing pipelines on their property. They are also precluded from seeking damages under the 1950 Right of Way Agreement based on Columbia's installation of the pig receiver and other above-ground appurtenances. This very issue was first raised in their Motion for Partial Summary Judgment (3:07CV28, docket no. 86), which was resolved by the parties' Agreed Order (3:07CV28, docket no. 90) on January 4, 2008. As explained above, the Agreed Order established Columbia's authority to condemn the O'Connors'

7

property for the construction of the pig receiver and other above-ground appurtenances, as well as the O'Connors' right to just compensation for the condemnation. As the O'Connors are precluded from re-asserting that the 1950 Right of Way Agreement was breached, they are also precluded from claiming that any breach of the Agreement constitutes a private nuisance under Virginia Code § 55-50.1.

### B. Failure to State Plausible Claims

The O'Connors' suit should be dismissed not only because it is preempted by the jury's award of compensation in the condemnation action, but also because it fails to state any claims for which relief may be granted under Virginia law. Because I ruled in the May 19, 2009 Order in the condemnation action that Line VM-109 was "approximately parallel" to the existing pipelines on the O'Connors' property as a matter of law, the O'Connors cannot now assert that the installation of Line VM-109 was a breach of the Right of Way Agreement on the grounds that it does not run parallel to the existing lines. The Order clearly held that the O'Connors were limited to compensation in the amount of $275.00 for the installation of Line VM-109. To the extent the O'Connors' claim seeks compensation in excess of this amount, it must be dismissed.

Although the O'Connors also seek damages resulting from the construction, maintenance, or operation of Line VM-109, they are entitled to recover only for *physical* damages to their property, which the complaint plainly fails to allege. In *Cantrell v. Appalachian Power Company*, the Virginia Supreme Court construed a contract between a landowner and a power company that was substantially similar to the 1950 Right of Way Agreement at issue in this action. 148 Va. 431, 139 S.E. 247 (1927). Under the agreement, the landowner granted to the power company a right of way for power lines

8

and "all necessary equipment and appliances, and the right to construct, operate, maintain, repair and remove the same" on her property in exchange for one dollar and the further payment of five dollars per structure. *Id.* at 432-33. The agreement explicitly stated that the amount of consideration covered only the easement right, and that "all damages resulting from the construction of the said line [were to] be ascertained and paid for as soon as" the line was completed. The power company also agreed to "always be responsible for any damage caused by the breaking or repairing of its lines." *Id.* at 433. After the power company constructed three structures on the landowner's property in connection with the transmission line, the landowner brought an action to recover damages for injury to her timber and underbrush as well as the depreciation in the value of her farm allegedly caused by the construction of the structures. The court rejected the landowner's claim for damages for the general depreciation in the value of her property, holding that she was only entitled to "direct physical damages resulting from" the construction of the power lines and not "any damages resulting from the existence and maintenance of the lines on the premises, after their construction." *Id.* at 435. This Court reached a similar conclusion under analogous circumstances in *Bernier v. Columbia Gas Transmission Corporation*, 2005 U.S. Dist. LEXIS 46532 (W.D. Va. Oct. 12, 2005), where a gas company and landowner were parties to an agreement granting the gas company the "right to lay, maintain, operate and remove a pipeline for the transportation of gas, and appurtenances…necessary to operate said pipeline, on, over and through a right of way easement" over the landowner's property. *Id.* at *6. Like the 1950 Right of Way Agreement, the agreement provided that the gas company was required to "pay for any damages that may arise from the maintenance, operation, and removal of said lines."

9

*Id.* After the gas company constructed an above-ground gas facility on the landowner's property without his knowledge or consent, the landowner sought damages for breach of contract on the grounds that: (1) the above-ground construction violated the terms of the easement, and (2) in the alternative, the gas company was liable for damages arising from the maintenance, operation, and removal of the gas pipeline. *Id.* at *10-*17. In dismissing the second alternative claim, I reasoned:

> The Plaintiffs' complaint does not suggest that they are seeking compensation for damages incidental to the construction of the gas valve facility. Rather, they appear to be claiming that they are entitled to damages simply because the Defendant has exercised its right to construct an aboveground appurtenance to the gas line. While the easement clearly entitles the Plaintiff to compensation for damages incidental to the exercise of a right granted by the easement, it does not entitle them to damages merely because the Defendant chooses to do what it is lawfully entitled to do. The Defendant, in return for the consideration of $975.00 paid to the grantors of the easement, has the right to use all of the rights, powers and privileges covered by the terms of the easement, so long as it does so in a way that does not unnecessarily burden the Plaintiffs' property. Therefore, the Plaintiffs' alternative claim for breach of contract fails to state a claim insofar as it only seeks compensation for the Defendant's use of its right rather than for damages incidental to this.

*Id.* at *17-*18. Under *Cantrell* and *Bernier*, a landowner may not state a contractual claim for general damages resulting from the construction, maintenance, or operation of certain easements on their land without asserting some sort of specific physical damages that arise independently of the gas company's general exercise of its contractually-granted rights. Like the landowner in *Bernier*, the O'Connors are not entitled to damages merely because Columbia has exercised its right to install Line VM-109 under the Right of Way Agreement. They are accordingly prohibited from seeking general damages for the diminution in the value of their property resulting from the construction, maintenance, or operation of Line VM-109.

Because the O'Connors fail to state a breach of contract claim, they cannot claim that the alleged breach of the Right of Way Agreement constitutes a private nuisance under Virginia law. Furthermore, the plain language of the Virginia Code does not even

10

permit the claim that the O'Connors seek to assert. Section 55-50.1 prohibits the owner of a dominant estate from using an easement in a way that is not reasonably consistent with the uses contemplated by the grant of the easement, "*[u]nless otherwise provided for in the terms of the easement.*" Va. Code Ann. § 55-50.1 (2009) (emphasis added). The construction, maintenance, and use of Line VM-109, the pig receiver, and the other above-ground appurtenances were all provided for in the terms of either the Right of Way Agreement or the easement rights granted by this Court in the condemnation action. As such, the O'Connors may not allege that the construction, maintenance, and use of those structures constitutes a private nuisance under Virginia law.

### C. Compulsory Counterclaim

Finally, even assuming that the O'Connors somehow asserted plausible legal claims, the complaint should still be dismissed because it qualifies as a compulsory counterclaim that should have been brought in the condemnation action pursuant to Federal Rule of Civil Procedure 13(a). Rule 13(a) requires a defendant to bring a counterclaim against the pleading party if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…and does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). "Although the rule does not explicitly so state, the effect of a defendant's failure to assert a counterclaim made compulsory by section (a) is to preclude its assertion in a later action against the former plaintiff." *Mesker Bros. Iron Co. v. Donata Corp.*, 401 F.2d 275, 278-79 (4th Cir. 1968); *see also Dow Chem. Co. v. Metlon Corp.*, 281 F.2d 292, 297 (4th Cir. 1960) (compulsory counterclaim under Rule 13(a) "must be asserted and, if not so asserted, it is waived"). In the Fourth Circuit, four inquiries are relevant to determine

11

whether a counterclaim is indeed compulsory: (1) whether the issues of fact and law raised in the claim and counterclaim are largely the same; (2) whether res judicata would bar a subsequent suit on the party's counterclaim; (3) whether substantially the same evidence supports or refutes the claim as well as the counterclaim; and (4) whether there is any logical relationship between the claim and counterclaim. *Sue & Sam Mfg. Co. v. B-L-S Constr. Co.*, 538 F.2d 1048 (4th Cir. 1976). It is not necessary for all four of the inquiries to be answered in the affirmative, as the test is intended to work "less like a litmus, more [like] a guideline." *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988). The "underlying thread" to each inquiry is "evidentiary similarity," and "where…the same evidence will support or refute both the claim and the counterclaim, the counterclaim will almost always be compulsory." *Id.* at 331-32. The claims that the O'Connors attempt to assert in this action clearly arise out of the same transaction that was the subject matter of Columbia's condemnation action – the installation, construction, maintenance, and operation of Line VM-109, the pig receiver, and the other above-ground appurtenances on the O'Connors' property. Had the O'Connors counterclaimed against Columbia in the condemnation action for breach of contract and private nuisance, they would not have been required to add another party over whom the Court lacked jurisdiction, and much of the same evidence concerning damages would have been relevant. While the issues of law in a condemnation action certainly differ from that of an action for breach of contract, the issues of fact relevant to both actions are largely the same. Finally, a strong logical relationship between Columbia's condemnation action and the O'Connors' action exists, as the O'Connors attempt to claim that Columbia's exercise of its condemnation rights constituted a breach of the Right of Way

12

Agreement and private nuisance. The O'Connors' suit therefore qualifies as a compulsory counterclaim, and their failure to bring it in the condemnation action should preclude its assertion at this date.

## IV. CONCLUSION

At the jury trial in the condemnation action, the O'Connors were squarely presented with the opportunity to seek compensation for the very damages they seek in this suit. The May 19, 2009 Order in advance of the trial clearly established the O'Connors' right to seek certain damages pursuant to the Right of Way Agreement, and counsel for the O'Connors made arguments and presented evidence to the jury in an attempt to obtain such damages. As such, the O'Connors are precluded from asserting their claims against Columbia in this separate action. Even if the O'Connors were not so precluded, their complaint fails to state any claims for which relief may be granted. The May 19, 2009 Order ruled as a matter of law that Line VM-109 was "approximately parallel" to the preexisting pipelines on the O'Connors' property, and the complaint fails to allege the type of direct, physical damages required for any recovery related to the construction, maintenance, operation, or removal of Line VM-109 under the Right of Way Agreement. Finally, even assuming that the O'Connors had viable legal claims, those claims should have been brought as compulsory counterclaims in the condemnation action and cannot be asserted at this later date. Counts I and II of the O'Connors' complaint will therefore be dismissed in a separate Order to follow.

It is so **ORDERED**.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 29th day of July, 2009.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE